The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEY INVESTMENT SERVICES, LLC,

Plaintiff,

v.

JOHN MIN SUL, *et al.*,

Defendants.

NO. 23-cv-1157

**ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER**

## I.   INTRODUCTION

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order, which was filed together with a Complaint for injunctive relief, alleging that its prior employees took Plaintiff's confidential client list and trade secret information and are using this information to solicit Plaintiff's clients in violation of their express contractual agreements with Plaintiff. Compl., ECF No. 1; Mot. ECF No. 3. Plaintiff seeks temporary relief to preserve the status quo pending arbitration between the parties before the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution. Mot. 1-2. Having reviewed the parties' briefs,[1] the relevant legal authorities,

---

[1] ECF Nos. 3 and 17 together with the related declarations and exhibits.

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 1

and heard the arguments of counsel, the Court GRANTS the motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

Plaintiff, Key Investment Services, LLC ("Key") employed Defendants, John Min Sul and Angela Saladis, as financial advisors who are registered representatives licensed with FINRA. Compl. ¶¶ 1-3, 11.  Mr. Sul and Ms. Saladis formed a new company, Defendant Platform Wealth, and resigned their employment with Key on June 15, 2023. *Id.* ¶¶ 11, 19, 23, 25.  Thereafter, Key alleges that Mr. Sul and Ms. Saladis have been soliciting Key clients to move their accounts to Platform Wealth. *Id.* ¶¶ 22-30.

During their employment with Key, both Mr. Sul and Ms. Saladis signed agreements—including employment offer letters, and individual registration agreements—in which they agreed to not solicit clients, with some exceptions,[2] for the period of one year following termination of employment. *Id.* ¶¶ 12, 13. Defendants both also signed Trade Secret Agreements. *Id.* ¶ 15.  Key sent letters to Mr. Sul and Ms. Saladis on the day after they resigned, reminding them of their contractual obligations not to solicit clients and requesting that they immediately return and refrain from disclosing Key's trade secrets. *Id.* ¶ 20.  Key believes that Mr. Sul and Ms. Saladis have Key's client contact information on their cell phones, and despite having been asked to delete it, they have not done so. *Id.* ¶ 21.[3]  Several of Key's clients that had been serviced by Mr. Sul and Ms. Saladis while they were with Key have transferred their accounts to Platform Wealth, and more clients continue to transfer their accounts every day. *Id.* ¶ 26.

---

[2] Exceptions include immediate family and clients brought to Key from a previous employer.
[3] Key has provided no evidence other than "on information and belief" that Defendants have Key information retained on their cell phones.

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 2

Key asserts six causes of action:

- Defend Trade Secrets Act – 18 U.S.C. § 1832 ("DTSA") against all Defendants
- Misappropriation of Trade Secrets – Ohio Uniform Trade Secrets Act ("OUTSA"), ORC § 1333.62, *et seq.* against all Defendants
- Breach of Contract against Mr. Sul and Ms. Saladis
- Breach of the Duty of Good Faith and Fair Dealing against Mr. Sul and Ms. Saladis
- Intentional Interference with Contractual Relations against Platform Wealth
- Intentional Interference with Business Relations or Prospective Business Advantage against Platform Wealth

Key seeks injunctive relief to compel Defendants to return its trade secret protected client list and refrain from soliciting Key's clients. Key specifically moves for a temporary restraining order: (1) prohibiting Defendants from using and/or disclosing Key's confidential customer information to any third party; (2) prohibiting Defendants from soliciting any of Key's clients or potential clients with whom they interacted, became acquainted, or learned of through access to Key's trade secret information, subject to the limitations set forth in the "Non-Solicitation of Key Clients" provision in their signed agreements; and (3) requiring the individual Defendants, John Min Sul and Angela Saladis, to provide their cell phones to a third party expert to remove all information they have taken from Key regarding all Key's clients, except for clients who are Defendant's immediate family. Mot. 2. Key also seeks a stay pending the outcome of the FINRA arbitration. *Id.*

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 3

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 65(b) empowers federal district courts to issue temporary restraining orders ("TRO"). Fed. R. Civ. P. 65(b); *see also* Local Rules W.D. Wash. LCR 65(b).[4]

To obtain a TRO, the movant must "meet the standards for issuing a preliminary injunction." *Navigant Consulting, Inc. v. Milliman, Inc.*, No. 18-1154, 2018 WL 3751983, at *3 (W.D. Wash. Aug. 8, 2018). This includes the requirement that the movant show that (1) it is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### IV. DISCUSSION

**A. Applicable Law**

As a preliminary matter, Key asserts that Ohio law applies to its state-law claims. Mot. 10. Defendants also cite to Ohio law in their brief, but at the hearing, Defendants disputed that Ohio law should apply to all claims and asserted that Washington law may apply.

---

[4] Local Western District of Washington Court Rule 65 states that "[m]otions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." Local Rules W.D. Wash. LCR 65(b)(1). Plaintiff's motion indicates that it has notified Defendants of this lawsuit and the pending motion. Mot. 12; see also Mot. 10 ("Counsel for KIS and the Defendants have conferred in good faith by Zoom, phone, and email from July 7, 2023, until the filing of this motion, but Defendants have refused to provide the requested relief without court intervention."). Further, Defendants' counsel had an opportunity to file notice of her appearance and provide a response to the motion before the Court held a hearing by videoconference with both parties having an opportunity to present their arguments.

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 4

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) (quoting *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,* 96 F.3d 1151, 1164 (9th Cir. 1996)). Washington choice-of-law rules generally enforce choice-of-law provisions. *Brown v. MHN Gov't Servs., Inc.*, 178 Wash. 2d 258, 263 (2013); *McKee v. AT&T Corp.*, 164 Wash. 2d 372, 384 (2008) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 695-96 (2007)). Further, the parties' chosen choice-of-law provision will only be disregarded if all three of the following conditions are met: "(1) without the choice-of-law provision, Washington law would apply; (2) the chosen state's law violates a fundamental public policy of Washington; and (3) Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *Id.* (citing *Erwin*, 161 Wash. 2d at 694-95).

Here, the parties' agreements expressly provide that Ohio state law governs non-solicitation and confidentiality of trade secrets. *See* Range Decl., Ex. 2, ECF No. 5-2 ("This Non-Solicitation of Key Customers provision shall be interpreted in accordance with Ohio law."); Ex. 6, ECF No. 5-6 ("The validity, interpretation, and performance of this Agreement shall be construed under the laws of Ohio."). While the parties have not had a full opportunity to argue their positions on the choice of law, at this point in the litigation, the Court will apply the choice of law provision contained in the parties' agreements. Both parties cite Ohio law in their briefs. The courts of both Ohio and Washington adopted the Restatement of the Law (Second) Conflict of Laws § 187(2) to determine whether the parties' contractual choice of law clause is valid. *Erwin*, 161 Wash.2d at 694; *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683, 686

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 5

(Ohio 1983). Defendants have not disputed the validity of the contracts[5] or that the choice of law clause applies to the contractual claims.[6]

### B. Temporary Restraining Order

The parties seriously dispute whether Key has met its burden to demonstrate that it is likely to succeed on the merits of its claims. Key has provided evidence demonstrating that Defendants are likely soliciting Key's customers and likely retained customer lists that allow them to do so. *See, e.g.*, Range Decl. Exs. 10, 12, ECF Nos. 5-10, 5-11 (letters from Key clients averring being contacted by Mr. Sul and invited to move accounts over to Platform Wealth); Hammontree Decl. ¶ 3, ECF No. 6 ("We began making calls to these clients immediately upon these Advisors' departure and as of July 17, 2023, 22 households with a total of 46 accounts told me, or my team, that they had already been contacted by Sul and/or Saladis and told of their new business."); *Id.* ¶ 4 ("16 accounts under my purview have moved to Platform Wealth without any contact whatsoever from Key Investment Services."); Range Decl. ¶ 11 ("Both Advisors embarked on a telephone campaign to contact accounts they had serviced at KIS. Both Sul and Saladis made calls to KIS clients shortly before or after terminating their employment.").

Defendants do not dispute that Mr. Sul communicated with Key's two clients who provided sworn declarations, but argue that the conversations were mischaracterized, and since both clients decided to stay with Key, there was no harm. Defendants assert that clients are free to move their accounts to continue to work with a trusted advisor, and that choice is protected by FINRA Rule

---

[5] The Court notes that Defendants reserve the right to assert that the non-solicitations clauses are invalid and unenforceable. Resp. 6 n. 3, ECF No. 17.
[6] Further analysis would be required to determine if Washington law applies to the tort claims, but it is not necessary to undertake that analysis for purposes of ruling on the TRO.

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 6

2140.  Mr. Sul avers that he did not solicit clients and provides statements from clients who represent that "John Sul and Angie Saladis did not solicit me to open an account with them and did not ask me to transfer my accounts away from Key Investments." Sul Decl. ¶ 8, Exs. pp. 6-72. ECF No. 18; Butterfield Decl. Ex. 2, ECF No. 15-2.  Key suggests that the unsworn client statements provided by Defendants appear to be form statements that were a part of the account-opening package of forms that clients were given to sign.

Ms. Saladis does not aver that she did not solicit any Key customers, but she does declare that "[a]t no time since my resignation have I ever used any KIS confidential customer information to contact any customers," and that she "never used any KIS customer account information to communicate with any of my customers to inform them of my contact information at my new firm." Saladis Decl. ¶¶ 10, 13.  However, it appears likely that there are both clients who initiated contact with Defendants as well as clients who were contacted by Defendants, during which a conversation became a solicitation.

Further, it is clear that Defendants acquired confidential client information while employed with Key and held such information on their cell phones. Defendants assert that they did not retain Key's client information on their cell phones. Resp. 8, ECF No. 17. Mr. Sul states that they remembered client names and were able to find contact information on publicly available sources such as WhitePages.com. *Id.* at 8-9. But the Uniform Trade Secrets Act "focuses on the nature of the information, not the form in which it exists. Thus, the distinction between written and memorized information is without legal significance." *Ed Nowogroski Ins., Inc. v. Rucker,* 88 Wn. App. 350, 358, (1997), aff'd, 137 Wn.2d 427 (1999); *see also Al Minor & Assoc., Inc. v. Martin*,

ORDER GRANTING PLAINTIFF KEY INVESTMENT SERVICES MOTION FOR TEMPORARY RESTRAINING ORDER

- 7

881 N.E.2d 850, 854 (2008). Therefore, it appears likely that Defendants retained Key client information.

Key's evidence shows that it is likely that Defendants have used this information to breach the non-solicitation clause of agreements they signed while employed with Key. While Key's evidence may be contested, it is sufficient to persuade the Court that there is a likelihood of success on the merits. And although there may not be a strong showing that Key will succeed on the merits of at least some of its claims, the Ninth Circuit follows a "'sliding scale' approach to evaluating the first and third *Winter* elements, [where] a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)); *see also All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

Key has made a strong case that it is and will continue to suffer irreparable harm in the absence of a temporary restraining order. *See* Range Decl. ¶¶ 14-17 (describing the number of accounts and dollar value that have already transferred out of Key to Platform Wealth, which was more than $50 million as of July 28, 2023). "The irreparable harm here is happening *right now*, daily, [and a]ny further delay will result in immediate and irreparable injury to [Key's] good will and business relationships." *Id.* (emphasis in original). "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Defendants contend that imposing a TRO causes harm to them by the negative appearance that they have done something wrong, which affects their reputation in the industry and to their clients. The balance of hardships, however, weighs heavily in Key's favor. A temporary restraining order, properly limited to avoid overreach, protects Key's rights. On the other hand, Defendants are simply being held to terms that they previously agreed to and which they assert they are not breaching. Therefore, although Defendants may suffer some temporary reputational harm by the imposition of a TRO, it is less than the irreparable injury described by Key.

Finally, upholding contractual rights and protecting owners of trade secrets serves the public interest. *See, e.g.*, *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914, 920 (Ohio Ct. App. 2003) ("Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest."); *A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1232 (W.D. Wash. 2020) ("[T]he public interest is benefitted through the enforcement of contractual provisions that aim to protect a company's investment in its development of trade secrets and customer relationships.").

In sum, Key has demonstrated a likelihood of success on the merits, and the balance of hardships weighs heavily in its favor. It has also made a strong showing of irreparable harm, and a restraint in this case would serve the public interest. Accordingly, the Court will grant Key's motion for a temporary restraining order, limited to 15 days pending FINRA arbitration and a hearing on preliminary or permanent injunctive relief. The Court will order Defendants to delete any Key customer information that may have been retained on their cell phones but will not require the cell phones to be provided to a third party to remove information.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Temporary Restraining Order, ECF No. 3, and it is further:

ORDERED that Plaintiff is not required to provide security in this matter; and it is further

ORDERED that Defendants, and anyone acting in concert with them, including but not limited to directors, officers, employees, and agents of Platform Wealth, are temporarily enjoined and restrained, directly or indirectly, as follows:

(a) Defendants are prohibited from using and/or disclosing Key's confidential customer information to any third party;

(b) Defendants are prohibited from soliciting any Key client or potential Key client with whom they interacted, became acquainted, or learned of through access to Key's trade secret information, subject to the limitations set forth in the non-solicitation provisions of the agreements Defendants signed,

(c) Defendants are ordered to delete all Key customer information from their cell phones; if Key identifies other categories of proprietary information that may be retained on the cell phones, it shall notify Defendants, and if a dispute arises, the parties shall contact the Court for a prompt telephone conference to resolve, and

IT IS FURTHER ORDERED that this injunction is issued without a bond. This order shall remain in effect for 15 days from the date of issuance and may be renewed on motion for a preliminary injunction with an evidentiary hearing.

In addition, this matter is stayed pending the outcome of the FINRA arbitration.

DATED this 7th day of August 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge